UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA.

99 MAY 14 PM 1:44

SIGN
RICHARD T. MARTIN
CLERK

UNITED STATES OF AMERICA          :          CIVIL ACTION
*ex. rel.* KEITH WINGFIELD


VERSUS


CONTECH CONSTRUCTION PRODUCTS,   :   NO. 99-400-B-M2
INC.

************************************************************************

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes Keith Wingfield, as well for

the United States of America as for himself, pursuant to the provisions of Title 31, United States

Code, Sections 3729 and 3730, who respectfully avers:

1.

This court has jurisdiction pursuant to the provisions of Title 31, United States Code,

Sections 3729 and 3730. Venue is proper in this district as the court has subject matter

jurisdiction and a substantial part of the events or omissions giving rise to the claim, including the

making of false claims recited herein, occurred here.

2.

At all times material hereto, Contech Construction Products, Inc. (hereinafter "Contech"),

a corporation which has its principal offices in Middletown, Ohio, was a fabricator of polymer

coated corrugated steel pipe which was provided in connection with highway construction

projects in the state of Louisiana approved by the United States Secretary of Transportation, and

1

funded in part by the United States government. On some projects, Contech provided pipe pursuant to fabrication contracts with the State of Louisiana, through the Louisiana Department of Transportation and Development (hereinafter "LADOTD"), and regularly submitted claims for payment, as being due in conformity with the contracts, to the offices of LADOTD at Baton Rouge, Louisiana. On other projects, Contech provided pipe pursuant to fabrication contracts with either the prime highway construction contractor or a subcontractor to the prime contractor. When providing pipe pursuant to its contracts with the prime contractor or the subcontractor, Contech did so with full knowledge that Contech's claims for payment would be incorporated in claims for payment on the prime contract.

3.

At all times material hereto, Keith Wingfield ("Wingfield") was an employee of Contech. His duties for that company included assisting Contech production managers in acquiring materials for the Louisiana highway contracts.

4.

Contech's contracts required that it supply only those materials which had been tested by LADOTD and qualified for use in Louisiana road construction, and which were designated as being qualified by inclusion on a list designated as "Qualified Products List 43" (hereinafter "QPL 43"). The United States Department of Transportation had adopted QPL 43 as the standard for federally funded highway projects in Louisiana.

5.

The polymer coated steel pipe supplied by Contech required the use of touch up compounds at the ends of every length of pipe and at points in between where abrasions and fabrication damage appeared prior to shipment. Failure to apply an effective touch up compound

2

would result in rust formation and the premature deterioration and failure of the pipe. For the Louisiana road projects which were being supplied pipe by Contech, the sole approved touch up compound was a primer and finish coat product called "Gulf Seal." Under its contract and the provisions of QPL 43, Contech employees were required to use Gulf Seal in readying pipe for shipment and supply to the LADOTD, as no other compound had passed tests designed to assure rust prevention.

6.

From a period beginning in or about May, 1996 and continuing until in or about September, 1997, in the Middle District of Louisiana and elsewhere, the defendant Contech, acting through management personnel at its corporate headquarters and at its manufacturing facilities in Greenville, Mississippi and Eunice, Louisiana, knowingly made, used, and caused to be made and used false records and statements to get false and fraudulent claims paid or approved by the United States, and did cause false and fraudulent claims to be presented for payment or approval, in violation of 31 U.S. Code 3729. In the accomplishment of this scheme, Contech knowingly substituted unapproved touch up compound - which had not passed Louisiana qualifying tests - on hundreds of tons of  pipe being supplied for Louisiana road projects, and knowingly submitted documents and claims for payment which concealed this substitution and falsely represented that Contech was in compliance with QPL 43. The following events occurred during the existence of the scheme:

a.  In May, 1996, Keith Wingfield was advised by a Contech plant superintendent in Greenville, Mississippi that the supply of Gulf Seal was "about to run out."  Wingfield communicated this information to the Executive Vice President of Contech, and specifically stated to him that the

3

Louisiana contract required the use of the Gulf Seal product and no other.

b. Within several weeks of the communication from Greenville, Wingfield was also advised by a Contech plant superintendent at Eunice, Louisiana that the supply of Gulf Seal was "virtually out." Wingfield also communicated this information to the Contech Executive Vice President.

c. After receiving the above information, Wingfield attempted to order an additional supply of Gulf Seal and learned that the company which produced the product had been sold, and that the company which now controlled the formula for its manufacture was not going to produce it and would not allow other producers to have access to the formula. Wingfield advised Contech management that no more Gulf Seal could be obtained, then began inquiries with other companies for the purpose of submitting a new touch up compound formula to Louisiana for testing and approval.

d. During the period May 1996 through September 1997, no other product was approved by Louisiana as qualified for use on the road projects. Contech throughout this period submitted false documentation to Louisiana, including false certifications of compliance with QPL 43, and requests for payment, which deceptively omitted the fact that it had substituted an unapproved touch up compound for the approved one. These false certifications and requests in turn caused Louisiana to unwittingly pass false documentation and representations to the United States Department of Transportation in order to be paid federal highway funds. The deception also included the timing by management personnel of applications of touch up compound, in order to prevent discovery of the fraud, so that no application would be in

4

progress when representatives of the State of Louisiana were present.

e.  The responsible management personnel at Contech knew that the contracts required Gulf Seal.
    They also had actual knowledge of, and recklessly disregarded or deliberately ignored the fact
    that Gulf Seal was not the compound being utilized, and that the submitted documentation
    was false in representing compliance with QPL 43 and the fabrication contracts.

7.

On information and belief, the payment to Contech for the thus fraudulently supplied pipe exceeds $500,000.00. The contracts made it plain that no pipe out of conformity with the QPL 43 touch up compound requirement was acceptable. The United States is thus entitled to monetary recovery to the extent of its highway fund contribution to the purchase. Additional damages may also be due to the extent necessary to repair harm caused by the installation of the unqualified pipe in Louisiana road beds. As road construction includes costs vastly exceeding those associated with the purchase of pipe, and the replacement of prematurely deteriorating pipe could require a complete reconstruction of the road itself at a date earlier than would be necessary due to normal road wear, the damages could substantially exceed the cost of the pipe in any area in which the misapplied compound is inferior to Gulf Seal. As noted above, prior to September, 1997, no other product passed tests designed to assure equivalent rust prevention qualities. The actual amount of damages will be determined at the trial of this case.

8.

The United States is entitled to treble damages pursuant to 31 U.S. Code 3729 (a). Pursuant to 31 U.S. Code 3730 (d), Keith Wingfield is entitled to an award, the amount of which

is to be determined by the court, and is further entitled to reasonable expenses, and payment by the defendant of his attorneys' fees and costs.

9.

Pursuant to 31 U.S. Code 3730 (b) (2), this complaint is filed *in camera*, and service of the complaint, along with written disclosure of substantially all material evidence and information Keith Wingfield possesses, is being made on the government in conformity with Rule 4 (i) of the Federal Rules of Civil Procedure. Service upon the defendant will not be made until the court so orders.

WHEREFORE, Keith Wingfield as *Qui Tam* Plaintiff prays that, after due proceedings, there be judgment in favor of the United States for damages, with an apportionment of an award therefrom to Keith Wingfield, and for expenses, attorney's fees, and costs.

BY ATTORNEYS:

EDWARD J. GONZALES
SHOWS, CALI & BURNS
644 ST. FERDINAND
BATON ROUGE, LA. 70802
(225) 346-1461

GARY CORUM
WILSON, ENGSTROM, CORUM & COULTER
809 WEST THIRD
LITTLE ROCK, ARKANSAS 72203
(501) 375-6453

6